## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                        :
In re                                   :    Chapter 11
                                        :
RENTPATH HOLDINGS, INC., et al.,        :    Case No. 20–10312 (BLS)
                                        :
          Debtors.¹                     :    (Jointly Administered)
                                        :    Re: Docket No. 20
------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion, dated February 12, 2020 (the "Motion")[2] of RentPath Holdings, Inc.

("Holdings") and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the

"Chapter 11 Cases"), as debtors and debtors in possession (collectively, the "Debtors"), seeking

entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364(c)(l),

364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: RentPath Holdings, Inc. (1735); RentPath, LLC (7573); Consumer Source Holdings LLC (8150); Discover Home Network, LLC (4311); Easy Media, LLC (5455); Electronic Lead Management, Inc. (4986); Electronic Lead Management MA, Inc. (3113); Electronic Lead Management VA, Inc. (7698); Live Response Solutions Holdings, LLC (0462); Live Response Solutions, LLC (5120); Viva Group Brokerage, Inc. (7156); and Viva Group, LLC (0789).  The Debtors' mailing address is 950 East Paces Ferry Road NE, Suite 2600, Atlanta, Georgia 30326.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") *inter alia*:

(i)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of $74,074,074.07 (the "DIP Facility" and, all amounts extended under the DIP Facility, the "DIP Loans"), pursuant to the terms and conditions of that certain *Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement" and, together with any exhibits attached thereto and other agreements related thereto, including, without limitation, all notices, guarantees, security agreements, ancillary documents and agreements, and any mortgages contemplated thereby, the "DIP Documents"), by and among RentPath, LLC, a Delaware limited liability company (in such capacity, the "Borrower"), each of the other Debtors as guarantors, Royal Bank of Canada as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and the lenders party thereto (the "DIP Lenders" and, together with the DIP Agent, the "DIP Secured Parties"), substantially in the form attached hereto as **Exhibit A**;

(ii)      authorizing the Debtors to execute and enter into the DIP Documents and to perform such other acts as may be necessary or appropriate in connection with the same;

(iii)      authorizing the Debtors to borrow $27,000,000 million under the DIP Facility (the "Interim Amount") upon entry of this Interim Order to avoid immediate and irreparable harm;

(iv)      granting all obligations under the DIP Facility and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as defined in the DIP Credit Agreement, the "DIP Obligations") the status of allowed superpriority administrative expense claims in each of the Chapter 11 Cases;

- 2 -

(v)        granting to the DIP Agent, for the benefit of the DIP Secured Parties, to secure the DIP Obligations, automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall have the priorities set forth herein and shall be subject to the Carve-Out (as defined below);

(vi)       authorizing and directing the Debtors to pay the principal, interest, premiums, fees, expenses, and other amounts payable under the DIP Documents as such become due and payable;

(vii)      authorizing the Debtors to use the Prepetition Collateral (as defined below) of the Prepetition Secured Parties (as defined below) and providing adequate protection to the Prepetition Secured Parties solely to the extent of any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral ("Diminution in Value"), resulting from the imposition of the automatic stay, the Debtors' postpetition use, sale, or lease of the Prepetition Collateral, including Cash Collateral, or the priming of the Prepetition Secured Parties' liens on the Prepetition Collateral (including by the Carve-Out (as defined below));

(viii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(ix)       scheduling a final hearing (the "Final Hearing") within forty (40) days of the Petition Date to consider the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing.

- 3 -

The Court having considered the Motion, the exhibits attached thereto, the *Declaration of Zul Jamal in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, the Martin Declaration, and the evidence submitted and arguments made at the interim hearing held on February 13, 2020 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To

- 4 -

A.    **Petition Date**.  On February 12, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.    Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and proceedings with respect to the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in the Chapter 11 Cases (a "Committee") pursuant to section 1102 of the Bankruptcy Code.

E.    **Notice**.  Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.    **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest, including any Committee, as set

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

forth in paragraph 40 herein, each Debtor admits, stipulates, acknowledges, and agrees as follows (paragraphs F(i) through F(vii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)     *Prepetition First Lien Facility.*   Pursuant to that certain First Lien Credit Agreement, dated as of December 17, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement" and, collectively with the Loan Documents (as defined in the First Lien Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition First Lien Documents"), among (a) RentPath, LLC (in such capacity, the "Prepetition Borrower"), (b) Holdings, (c) Royal Bank of Canada, as administrative agent and collateral agent (in such capacities, the "Prepetition First Lien Agent"), (d) the guarantors thereunder (in such capacities, the "Prepetition First Lien Guarantors" and, together with the Prepetition Borrower, the "Prepetition First Lien Obligors"), and (e) the lenders party thereto from time to time (the "Prepetition First Lien Lenders" and, collectively with the Prepetition First Lien Agent, the "Prepetition First Lien Secured Parties"), the Term Lenders (as defined in the First Lien Credit Agreement) provided term loans to the Prepetition Borrower, and the Revolving Credit Lenders (as defined in the First Lien Credit Agreement) provided revolving loans to the Prepetition Borrower (collectively, the "Prepetition First Lien Facility").

(ii)     *Prepetition First Lien Obligations.*   As of the Petition Date, the Prepetition First Lien Obligors were indebted to the Prepetition First Lien Secured Parties, without defense, counterclaim, or offset of any kind, in respect of the loans  incurred under the Prepetition

- 6 -

First Lien Facility (collectively, the "<u>Prepetition First Lien Loans</u>"), in an aggregate principal amount, as of the Petition Date, not less than $517.70 million (collectively, together with accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition First Lien Obligors' obligations pursuant to the Prepetition First Lien Documents, including all "Obligations" as defined in the First Lien Credit Agreement, in each case, as of the Petition Date, and all interest, fees, costs, and other charges allowable under Section 506(b) of the Bankruptcy Code (the "<u>Prepetition First Lien Obligations</u>").

        (iii)    *Prepetition Second Lien Facility.*  Pursuant to that certain Second Lien Credit Agreement, dated as of December 17, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>Second Lien Credit Agreement</u>" and, collectively with the Loan Documents (as defined in the Second Lien Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "<u>Prepetition Second Lien Documents</u>" and, collectively with the Prepetition First Lien Documents, the "<u>Prepetition Documents</u>"), among (a) the Prepetition Borrower, (b) Holdings, (c) Wilmington Savings Fund Society, FSB, as successor administrative agent and collateral agent, (in such capacities, the "<u>Prepetition Second Lien Agent</u>" and, together with the Prepetition First Lien Agent, the "<u>Prepetition Agents</u>"), (d) the guarantors thereunder (the "<u>Prepetition Second Lien Guarantors</u>"

- 7 -

and, together with the Prepetition Borrower, the "Prepetition Second Lien Obligors" and, together with the Prepetition First Lien Obligors, the "Prepetition Obligors"), and (e) the lenders party thereto (the "Prepetition Second Lien Lenders" and, collectively with the Prepetition Second Lien Agent, the "Prepetition Second Lien Secured Parties" and, together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), the Prepetition Second Lien Lenders provided term loans to the Prepetition Borrower (the "Prepetition Second Lien Facility" and, together with the Prepetition First Lien Facility, the "Prepetition Secured Facilities").

    (iv) *Prepetition Second Lien Obligations.*  As of the Petition Date, the Prepetition Second Lien Obligors were indebted to the Prepetition Second Lien Secured Parties, without defense, counterclaim, or offset of any kind, in respect of the loans  incurred under the Prepetition Second Lien Facility (collectively, the "Prepetition Second Lien Loans"), in an aggregate principal amount, as of the Petition Date, not less than $170.00 million (collectively, together with accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Obligors' obligations pursuant to the Prepetition Second Lien Documents, including all "Obligations" as defined in the Second Lien Credit Agreement, in each case, as of the Petition Date, and all interest, fees, costs, and other charges allowable under Section 506(b) of the Bankruptcy Code (the "Prepetition Second Lien Obligations" and, together with the Prepetition First Lien Obligations, the "Prepetition Secured Obligations").

- 8 -

(v)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition First Lien Documents, prior to the Petition Date, the Prepetition First Lien Obligors granted to the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, a first-priority security interest in and continuing lien (the "Prepetition Senior Liens") on "Collateral," as such term is defined in the First Lien Credit Agreement (the "Prepetition First Lien Collateral"), which includes all accounts, chattel paper, commercial tort claims, deposit accounts, documents, equipment, fixtures, general intangibles (including all intellectual property, patents, and trademarks), goods, instruments, inventory, investment property, all books and records pertaining to the "Collateral," all proceeds and products of any and all of the foregoing and all supporting obligations, collateral security and guarantees given by any person with respect to any of the foregoing, as well as pledged debt and equity interests.  As more fully set forth in the Prepetition Second Lien Documents, prior to the Petition Date, the Prepetition Second Lien Obligors granted to the Prepetition Second Lien Agent, for the benefit of the Prepetition Second Lien Secured Parties, a second-priority security interest in and continuing lien (the "Prepetition Junior Liens" and, together with the Prepetition Senior Liens, the "Prepetition Liens"), subject and subordinate to the Prepetition Senior Liens, on "Collateral," as such term is defined in the Second Lien Credit Agreement (the "Prepetition Second Lien Collateral" and, together with the Prepetition First Lien Collateral, the "Prepetition Collateral").

(vi)    *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Obligations.*  The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured

- 9 -

Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Senior Liens were senior in priority over any and all other liens on the Prepetition Collateral, including the Prepetition Junior Liens, subject only to certain liens permitted by the Prepetition Documents (in each case, to the extent that such existing liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Senior Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, the "Permitted Liens");[4] (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Obligors, enforceable in accordance with the terms of the applicable Prepetition Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, arising out of, based upon, or related to the

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien. The right of a seller of goods to reclaim such goods under Section 546(c) of the Bankruptcy Code is not a Permitted Lien and is expressly subject to the Prepetition Liens and DIP Liens.

Prepetition Secured Facilities; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, or the validity, extent, or priority of the Prepetition Liens; and (g) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vii)    *Releases.*  The Debtors hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the DIP Agent, the Prepetition Secured Parties, all current and future DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the "Releasees"), of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, the Prepetition Documents, and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Secured Obligations or the DIP Obligations that the Debtors may now have or may claim to have against

- 11 -

the Releasees arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court's entry of this Interim Order.

G.    **Cash Collateral**.  All of the Debtors' cash, including any cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

H.    **Intercreditor Agreement**.   Pursuant to section 510 of the Bankruptcy Code, that certain Intercreditor Agreement, dated as of December 17, 2014 (as amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement"), among the Prepetition First Lien Agent and the Prepetition Second Lien Agent, and any other applicable intercreditor or subordination provisions contained in any of the other Prepetition Documents, (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights, and remedies of such parties with respect to the replacement liens, administrative expense claims, and superpriority administrative expense claims granted or the amounts payable by the Debtors under this Interim Order or otherwise), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein or therein.

I.    **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

(i)    *Request for Postpetition Financing and Use of Cash Collateral*.  The Debtors seek authority to (a) enter into the DIP Facility and incur the DIP Obligations on the terms described herein and in the DIP Documents and (b) use Cash Collateral on the terms described herein, in each case, to administer their Chapter 11 Cases and fund their operations.  At the Final

- 12 -

Hearing, the Debtors will seek final approval of the DIP Facility and use of Cash Collateral pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Agent at the direction of the Required Lenders (as defined in the DIP Credit Agreement, the "Required Lenders"). Notice of the Final Hearing and the proposed Final Order will be provided in accordance with this Interim Order.

(ii) *Priming of the Prepetition Liens.* The priming of the Prepetition Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, will enable the Debtors to obtain the DIP Facility and to continue to operate their business during the pendency of the Chapter 11 Cases, to the benefit of their estates and creditors. The Prepetition Secured Parties are entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii) *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have demonstrated an immediate need to use Cash Collateral on an interim basis and to obtain credit in an amount equal to the Interim Amount pursuant to the DIP Facility in order to, among other things, continue their ordinary course operations, administer these Chapter 11 Cases, and preserve the going-concern value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to pay for certain costs and expenses related to the Chapter 11 Cases, and to otherwise finance their operations until entry of the Final Order requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and

- 13 -

irreparably harm the Debtors, their estates, and parties in interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business until the Final Order is entered without the authorization to use Cash Collateral and to borrow the Interim Amount.

(iv)    *No Credit Available on More Favorable Terms.*  The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis on better terms is not available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral, with the priorities set forth herein; (2) superpriority claims; and (3) the other protections set forth in this Interim Order.

(v)    *Use of Cash Collateral and Proceeds of the DIP Facility.*  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the authorization to use the Prepetition Collateral, including Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that

- 14 -

proceeds of the DIP Facility and the Prepetition Secured Parties' Cash Collateral shall be used in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Documents, and as set forth in paragraphs 16-17 hereof, the "Budget"),[5] solely for the purposes set forth in the DIP Credit Agreement and this Interim Order, including (a) ongoing working capital and other general corporate purposes of the Debtors; (b) permitted payment of costs of administration of the Chapter 11 Cases, including restructuring charges arising on account of the Chapter 11 Cases, including statutory fees of the U.S. Trustee and allowed professional fees and expenses of the Debtors' professionals and professionals retained by a Committee (if any), subject to the Investigation Budget Amount; (c) payment of such prepetition expenses as consented to by the DIP Agent, acting at the direction of the Required Lenders; (d) payment of interest, premiums, fees, expenses, and other amounts (including, without limitation, legal and other professionals' fees and expenses of the DIP Agent and the DIP Lenders) owed under the DIP Documents, including those incurred in connection with the preparation, negotiation, documentation, and Court approval of the DIP Facility; (e) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 12-13 hereof; and (f) payment of obligations arising from or related to the Carve-Out (as defined below), and making disbursements therefrom, including by funding the Professional Fees Account (as defined below).

(vi)    *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, and authorization

---

[5]    A copy of the initial Budget is attached hereto as **Schedule 1**.

to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured

Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors

shall apply the proceeds of the DIP Collateral in accordance with this Interim Order.

(vii)    *DIP Election Procedures.*    The procedures to govern the

participation of the Prepetition First Lien Lenders and, if applicable, the Prepetition Second Lien

Lenders in the DIP Facility (the "DIP Election Procedures"), as set forth in the DIP Credit

Agreement, are fair and reasonable.

J.    **Adequate Protection**. The Prepetition First Lien Agent, for the benefit of

the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Agent, for the benefit

of the Prepetition Second Lien Secured Parties, are entitled to receive adequate protection solely

to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral,

including, without limitation, the Cash Collateral. Pursuant to sections 361, 363 and 507(b) of the

Bankruptcy Code, as adequate protection, subject in all respects to the Carve-Out (as defined

below) and subject to paragraph 40 of this Interim Order, the Prepetition Secured Parties will

receive (i) solely to the extent of any Diminution of Value of their interests in the Prepetition

Collateral, Adequate Protection Liens (as defined below) and 507(b) Claims (as defined below);

(ii) solely with respect to the Prepetition First Lien Secured Parties and the Prepetition Second

Lien Agent, current payment of reasonable and documented fees and expenses and other

disbursements as set forth in paragraphs 12-13 herein; and (iii) financial and other reporting, in

each case, as set forth in paragraphs 12-13 herein.

K.    **Sections 506(c) and 552(b).**  In light of (i) the DIP Agent's and the DIP

Lenders' agreement that their liens and superpriority claims shall be subject to the Carve-Out (as

- 16 -

defined below); (ii) the Prepetition Secured Parties' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve-Out (as defined below) and subordinate to the DIP Liens (as defined below); and (iii) the DIP Agent's, the DIP Lenders', and the Prepetition Secured Parties' agreement to the payment (in accordance with the Budget (subject to the Permitted Variance (as defined below)) and subject to the terms and conditions of this Interim Order and the DIP Documents) of certain expenses of administration of these Chapter 11 Cases, including certain critical trade claims, (a) subject to entry of the Final Order, the Prepetition Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.    **Good Faith of the DIP Agent and DIP Lenders and the Prepetition Secured Parties**.

(i)    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the extensions of credit under the DIP Facility are fair and reasonable, are appropriate for secured financing to debtors in possession, are the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (ii) the terms and conditions of the DIP Facility and the use of the Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors; (iii) the use of Cash Collateral, including, without limitation, pursuant to this Interim Order, has been allowed in "good

faith" within the meaning of section 364(e) of the Bankruptcy Code; (iv) any credit to be extended, loans to be made, and other financial accommodations to be extended to the Debtors by the DIP Secured Parties and the Prepetition Secured Parties, including, without limitation, pursuant to this Interim Order, have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code by the DIP Parties and the Prepetition Secured Parties in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code; and (v) the DIP Facility, the DIP Liens (as defined below), the DIP Superpriority Claims (as defined below), the Adequate Protection Liens, and the 507(b) Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(ii)    Absent an order of this Court and the provision of Adequate Protection, consent of the Prepetition Secured Parties is required for the Debtors' use of Cash Collateral and other Prepetition Collateral. The Prepetition Secured Parties have consented, or are deemed pursuant to the Prepetition Documents to have consented, or have not objected, to the Debtors' use of Cash Collateral and other Prepetition Collateral or to the Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

M.    **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

N.    **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight

- 18 -

courier, or hand delivery to certain parties in interest, including the Notice Parties. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances, and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      <u>DIP Facility Approved on Interim Basis</u>.  The Motion is granted on an interim basis as set forth herein.  The DIP Facility, in an amount equal to the Interim Amount, is hereby authorized and approved to the extent set forth herein, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order.  All objections to this Interim Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry.

2.      <u>Authorization of the DIP Facility</u>.  The DIP Facility is hereby approved to the extent set forth herein.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined below).  The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, premiums, fees, payments, expenses,

- 19 -

and other amounts described in the DIP Documents as such amounts become due and payable, without need to obtain further Court approval, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. Upon the Closing Date (as defined in the DIP Credit Agreement, the "Closing Date"), the Upfront Discount (as defined in the Motion), the Backstop Premium set forth in the Backstop Commitment Letter (as defined in the DIP Credit Agreement), and the Redemption Premium (as defined in the Motion) shall be fully earned and non-refundable and shall be payable in accordance with and at the times specified in the DIP Documents.

3.     Authorization to Borrow. To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the DIP Termination Date (as defined below), and subject to the terms, conditions, limitations on availability, and reserves (as applicable) set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit (in the form of DIP Loans) under the DIP Facility in an amount equal to the aggregate outstanding principal Interim Amount of $27,000,000.

4.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents, the Debtors shall (i) provide notice (which may be provided through electronic mail or facsimile) to counsel to any Committee (if appointed), the U.S. Trustee, the DIP Agent, and the Prepetition Agents; (ii) provide notice to the Court; and (iii) obtain approval of the Court.

5.    <u>DIP Obligations</u>.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, in each case, under the DIP Documents or this Interim Order or secured by the DIP Liens (as defined below), including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts owing under the DIP Documents.  The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, and the use of Cash Collateral shall automatically cease, in each case, without notice or demand on the DIP Termination Date (as defined herein), except as provided in paragraph 26 herein and subject to the requirements of the Carve-Out (as

- 21 -

defined below). No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below) but excluding any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other provision with respect to avoidance actions under the Bankruptcy Code or applicable state law equivalents) or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.      DIP Liens. Subject and subordinate solely to the Carve-Out (as defined below) as set forth in this Interim Order and effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, in order to secure the DIP Obligations, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible or intangible, of each of the Debtors (the "DIP Collateral"), including, without limitation (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of Holdings'

subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests and all proceeds of leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions (such actions, "Avoidance Actions") brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents (the "Avoidance Action Proceeds"); *provided*, that no liens shall attach to Avoidance Actions; (e) subject to entry of the Final Order, the proceeds of any exercise of the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code; and (f) all DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date.  Notwithstanding the foregoing, the DIP Collateral shall not include (and the DIP Liens shall not extend to) amounts deposited in the Professional Fees Account (as defined below) in accordance with this Interim Order, including with respect to the Carve-Out (as defined below), and any "Excluded Assets" (as defined in the DIP Documents).

      7.    <u>DIP Lien Priority</u>.  The DIP Liens shall have the following priority:

- 23 -

(a)    pursuant to Section 364(c) of the Bankruptcy Code, the DIP Liens shall be first priority liens on all of the Debtors' unencumbered assets (now or hereafter acquired and all proceeds thereof) other than "Excluded Assets," as defined in the DIP Documents;

(b)    pursuant to Section 364(c)(3) of the Bankruptcy Code, the DIP Liens shall be immediately junior to any liens on the Debtors' encumbered assets (now or hereafter acquired and all proceeds thereof) that are subject to valid, perfected, and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than as set forth in clause (c) immediately below (collectively, the "Non-Primed Liens");

(c)    pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be priming first-priority liens on all of the Debtors' assets (now or hereafter acquired and all proceeds thereof) that serve as "Collateral" under the Prepetition Secured Facilities (the "Existing Primed Secured Facilities"), senior to the Prepetition Liens and the Adequate Protection Liens.

(d)    Other than as set forth herein (including with respect to the Carve-Out (as defined below)) or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to any Successor Case, and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to any of sections 510, 549 or 550 of the Bankruptcy Code (subject in all respects to the Challenge Deadline and related provisions set forth in paragraph

- 24 -

40 herein). No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

8. <u>Superpriority Claims</u>. Subject and subordinate to the Carve-Out (as defined below), upon entry of this Interim Order, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations (a) with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

9. <u>No Obligation to Extend Credit</u>. Except as required to fund the Carve-Out (as defined below) as set forth in this Interim Order, the DIP Lenders shall have no obligation to make any loan or advance or to issue, amend, renew, or extend any letters of credit or bankers' acceptance under the DIP Documents unless (and subject to the occurrence of the Closing Date) all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent in accordance with the terms of the DIP Credit Agreement.

- 25 -

10.     <u>Use of Proceeds of DIP Facility</u>.

(a)     From and after the Petition Date, the Debtors shall use proceeds of borrowings under the DIP Facility only for the purposes specifically set forth in this Interim Order and the DIP Documents, and, in each case, in compliance with the Budget (subject to such the Permitted Variance (as defined in the DIP Credit Agreement, the "<u>Permitted Variance</u>") and the terms and conditions in this Interim Order and the DIP Documents.

(b)     The Debtors shall be authorized to cash collateralize outstanding letters of credit issued under, and in accordance with, the First Lien Credit Agreement, in each case, in compliance with the Budget (subject to Permitted Variances).

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Documents, and in accordance with the Budget (subject to the Permitted Variance), the Debtors are authorized to use Cash Collateral until the DIP Termination Date (as defined below); *provided, however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in accordance with the Budget (subject to the Permitted Variance), and as otherwise agreed by the DIP Agent at the direction of the Required Lenders.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order (including with respect to the Carve-Out (as defined below)), the DIP Facility, the DIP Documents, or by an order of the Court, and in accordance with the Budget (subject to the Permitted Variance).

- 26 -

12.    <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>.  Subject to the Investigation (as defined below), the Prepetition First Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral (the "<u>First Lien Adequate Protection Obligations</u>"); *provided*, that, for the avoidance of doubt, the First Lien Adequate Protection Obligations shall not have recourse to the amounts deposited in the Professional Fees Account (as defined below) in accordance with this Interim Order, including with respect to the Carve-Out (as defined below). As adequate protection, the Prepetition First Lien Secured Parties are hereby granted the following:

(a)    <u>First Lien Adequate Protection Liens</u>.  As security for the payment of the First Lien Adequate Protection Obligations, the Prepetition First Lien Agent (for itself and for the benefit of the Prepetition First Lien Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral, including, subject to entry of the Final Order, Avoidance Action Proceeds (the "<u>First Lien Adequate Protection Liens</u>"), subject and subordinate only to (i) the Carve-Out (as defined below), (ii) the DIP Liens, and (iii) the Non-Primed Liens, subject to the terms of the Intercreditor Agreement.

(b)    <u>First Lien Section 507(b) Claims</u>.    The First Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>First Lien 507(b) Claims</u>"), with priority in payment over any and all

- 27 -

administrative expenses of the kinds specified or ordered pursuant to any provision of the

Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b),

507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, or 1114 of

the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out (as defined below) and (ii)

the DIP Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent

expressly set forth in this Interim Order, the Prepetition First Lien Secured Parties shall not receive

or retain any payments, property, or other amounts in respect of the First Lien 507(b) Claims unless

and until the Carve-Out (as defined below) is funded and all DIP Obligations shall have

indefeasibly been paid in full in cash.  Notwithstanding their status as First Lien 507(b) Claims,

the First Lien Adequate Protection Obligations may be satisfied in a plan of reorganization

confirmed in the Chapter 11 Cases in any manner set forth in such plan if holders of more than 66-

2/3% in amount of the First Lien Adequate Protection Obligations consent to such treatment;

*provided*, *however*, that nothing in this Interim Order shall be construed as establishing that the

confirmation requirements for a chapter 11 plan have been satisfied, predetermining any provision

of a chapter 11 plan, or predetermining how any vote by any insider is counted with respect to a

chapter 11 plan.

       (c)    <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay,

as adequate protection, to the Prepetition First Lien Secured Parties all accrued and unpaid fees

and reasonable and documented disbursements incurred by the Prepetition First Lien Secured

Parties, whether accrued before, on, or after the Petition Date, including, without limitation, the

reasonable and documented fees and expenses of Milbank LLP and Morris, Nichols, Arsht &

Tunnell LLP, as counsel to the Ad Hoc Committee of Crossholder Lenders, and Houlihan Lokey

- 28 -

Capital, Inc., as financial advisor to the Ad Hoc Committee of Crossholder Lenders (excluding success or transaction fees); *provided*, that such payments shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest, or otherwise.  Professionals of the Prepetition First Lien Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed), contemporaneously with the delivery of such fee and expense statements to the Debtors.  After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) days to raise an objection thereto.  If an objection is timely raised, such objection shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition First Lien Secured Parties incurred on or prior to such date without the need for any professional engaged by the Prepetition First Lien Secured Parties to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to the Prepetition First Lien Secured Parties

- 29 -

shall be required to file an interim or final application seeking compensation for services or reimbursement of expenses with the Court.

(d) <u>Information</u>. The Debtors shall concurrently deliver to the Prepetition First Lien Agent and the legal and financial advisors to the Ad Hoc Committee of Crossholder Lenders, all information, reports, documents, and other materials that the Debtors provide to the DIP Secured Parties pursuant to the DIP Documents, this Interim Order, and the Final Order, subject to the confidentiality provisions contained in the First Lien Credit Agreement.

13. <u>Adequate Protection for the Prepetition Second Lien Secured Parties</u>. Subject to the Investigation, the Prepetition Second Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral (the "<u>Second Lien Adequate Protection Obligations</u>" and, together with the First Lien Adequate Protection Obligations, the "<u>Adequate Protection Obligations</u>"); *provided*, that, for the avoidance of doubt, the Second Lien Adequate Protection Obligations shall not have recourse to the amounts deposited in the Professional Fees Account (as defined below) in accordance with this Interim Order, including with respect to the Carve-Out (as defined below). As adequate protection, the Prepetition Second Lien Secured Parties are hereby granted the following:

(a) <u>Second Lien Adequate Protection Liens</u>. As security for the payment of the Second Lien Adequate Protection Obligations, the Prepetition Second Lien Agent (for itself and for the benefit of the Prepetition Second Lien Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the

- 30 -

Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral, including, subject to entry of the Final Order, Avoidance Action Proceeds (the "Second Lien Adequate Protection Liens" and, together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out (as defined below), (ii) the DIP Liens, (iii) the First Lien Adequate Protection Liens, (iv) the Prepetition Senior Liens, and (v) the Non-Primed Liens, in each case, subject to the terms of the Intercreditor Agreement.

(b)    Second Lien Section 507(b) Claims.    The Second Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "Second Lien 507(b) Claims" and, together with the First Lien 507(b) Claims, the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out (as defined below), (ii) the DIP Superpriority Claims granted in respect of the DIP Obligations, and (iii) the First Lien 507(b) Claims.  Except to the extent expressly set forth in this Interim Order, the Prepetition Second Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Second Lien 507(b) Claims unless and until the Carve-Out (as defined below) is funded and all DIP Obligations, First Lien Adequate Protection Obligations, and Prepetition First Lien Obligations shall have indefeasibly been paid in full in cash.  Notwithstanding their status as Second Lien 507(b) Claims,

- 31 -

the Second Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Chapter 11 Cases in any manner set forth in such plan if holders of more than 66-2/3% in amount of the Second Lien Adequate Protection Obligations consent to such treatment; *provided, however*, that nothing in this Interim Order shall be construed as establishing that the confirmation requirements for a chapter 11 plan have been satisfied, predetermining any provision of a chapter 11 plan, or predetermining how any vote by any insider is counted with respect to a chapter 11 plan.

(c)     <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay, as adequate protection, to the Prepetition Second Lien Agent and the Prepetition Second Lien Lenders that are members of the Ad Hoc Second Lien Committee all accrued and unpaid fees and reasonable and documented disbursements incurred by the Prepetition Second Lien Agent (subject to an aggregate cap of $100,000) and Akin Gump Strauss Hauer & Feld LLP, as counsel to the Ad Hoc Second Lien Committee (subject to an aggregate cap of $100,000), whether accrued before, on, or after the Petition Date; *provided*, that such payments shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest, or otherwise.  Professionals of the Prepetition Second Lien Agent shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of

- 32 -

such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed), contemporaneously with the delivery of such fee and expense statements to the Debtors.  After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) days to raise an objection thereto.  If an objection is timely raised, such objection shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition Second Lien Agent incurred on or prior to such date without the need for any professional engaged by the Prepetition Second Lien Agent to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to the Prepetition Second Lien Agent shall be required to file an interim or final application seeking compensation for services or reimbursement of expenses with the Court.

(d)    Information.    The Debtors shall concurrently deliver to the Prepetition Second Lien Agent and the legal advisors to the Ad Hoc Second Lien Committee all information, reports, documents, and other material that the Debtors provide to the DIP Secured Parties pursuant to the DIP Documents, this Interim Order, and the Final Order, subject to the confidentiality provisions contained in the Second Lien Credit Agreement.

14.    Adequate Protection Reservation.    Subject to the Carve-Out (as defined below), nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties

- 33 -

hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, subject in all respects to the terms and limitations of the Intercreditor Agreement.

15.    Effect of Order on Adequate Protection. In the event that it is determined by a final order, which order shall not be subject to any appeal, stay, reversal, or vacatur, that (a) no Diminution in Value of any Prepetition Secured Party's respective interests in the Prepetition Collateral has occurred or (b) such Prepetition Secured Party is determined to be undersecured, then a party in interest shall have the right to assert that payments of Adequate Protection shall be applied toward repayment of the principal amount due under the Prepetition Secured Facilities as is owing to such Prepetition Secured Party.

16.    Budget Maintenance. The Debtors shall use the proceeds of all borrowings under the DIP Facility and Cash Collateral in accordance with the Budget, subject in all respects to the Permitted Variance. The Budget annexed hereto as Schedule 1 shall constitute the initial Budget. On the first Thursday that is four (4) full weeks after the Petition Date, and on the Thursday of each fourth week thereafter, the Debtors shall provide to the DIP Agent and the legal and financial advisors of the Ad Hoc Committee of Crossholder Lenders with (a) an updated 13-week statement of the Debtors' anticipated cash receipts and disbursements for the subsequent 13-week period (a "Proposed Budget"), which Proposed Budget shall modify and supersede any prior

- 34 -

Budget upon the approval of the Required Lenders in their reasonable discretion (such approval not to be unreasonably withheld), and (b) a report setting forth total organic and paid visitors, unique visits, and leads to core for such four-week period, in addition to a report setting forth the beginning and ending property period, as well as a breakdown of gross new, dropped, and adjusted properties for such four-week period. Until the Required Lenders approve the Proposed Budget in their reasonable discretion (such approval not to be unreasonably withheld), the then-current Budget shall remain the Budget, and the DIP Lenders shall have no obligation to fund such Proposed Budget. Each Budget delivered to the DIP Agent and the legal and financial advisors to the Ad Hoc Committee of Crossholder Lenders shall be accompanied by such supporting documentation as reasonably requested by such legal and financial advisors, and each Budget shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable. A copy of the Budget shall be delivered to the legal and financial advisors to the Committee (if appointed) and the U.S. Trustee following such Budget's approval.

17. <u>Budget and Reporting Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the Permitted Variance, and the Debtors shall provide all reports and other information as required in the DIP Credit Agreement (subject to the grace periods provided therein). The Debtors' failure to comply with the Budget (subject to the Permitted Variance) or to provide the reports and other information required in the DIP Credit Agreement shall constitute an Event of Default, following the expiration of any applicable grace period set forth in the DIP Credit Agreement.

18. <u>Incremental Performance Marketing Expenditures</u>.

(a) Beginning on the second to last business day before the last full

- 35 -

week in February, and continuing on a monthly basis thereafter on the second to last business day before the last full week of each month, the Debtors shall provide the DIP Agent and the legal and financial advisors to the Ad Hoc Committee of Crossover Lenders with a proposal for the incremental performance marketing expenditures for the subsequent month (a "Monthly Incremental Marketing Proposal") and host a pre-scheduled conference call with the DIP Lenders to discuss such proposal.  The DIP Lenders shall have forty-eight (48) hours after the conclusion of the pre-scheduled conference call to respond to such proposal, and if such forty-eight (48) hour period lapses without any such response, the Required Lenders will be deemed to have approved the Monthly Incremental Marketing Proposal.  The total cash disbursements on account of incremental performance marketing expenditures for the duration of the Chapter 11 Cases shall not exceed the Incremental Performance Marketing Cap, as defined in the Performance Marketing Schedule (as defined in the DIP Credit Agreement).  Following delivery of a Monthly Incremental Marketing Proposal, the Debtors may request approval of additional incremental performance marketing expenditures, the approval of which shall be within the Required Lenders' sole discretion.  Notwithstanding anything to the contrary contained herein, the Debtors may timely pay all obligations arising from incremental performance marketing expenditures incurred by the Debtors prior to the Petition Date.

(b)    Notwithstanding anything to the contrary contained herein, the Debtors shall be permitted to incur the Pre-Approved Incremental Marketing Spend (as defined in the DIP Credit Agreement) that were set forth on the Performance Marketing Schedule (as defined in the DIP Credit Agreement) previously delivered to the DIP Lenders, including Pre-Approved Incremental Marketing Spend for the month of February, without any further approval of the

Required Lenders.

19.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Interim Order, as applicable; (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order; and (e) permit the First Lien Letter of Credit Issuer (as defined in the Motion) to cash collateralize the First Lien Letter of Credit (as defined in the Motion), in accordance with the terms of the First Lien Credit Agreement.

20.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or the Adequate Protection Liens or to entitle the DIP Agent, the DIP Lenders, and the

RLF1 22907944v.1

Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent, Prepetition First Lien Agent, and Prepetition Second Lien Agent is authorized to file or record, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect its respective liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver, promptly upon demand to the DIP Agent, Prepetition First Lien Agent, and Prepetition Second Lien Agent, all such financing statements, mortgages, notices, and other documents as the DIP Agent, Prepetition First Lien Agent, or Prepetition Second Lien Agent, as applicable, may reasonably request.  Each of the DIP Agent, Prepetition First Lien Agent, and Prepetition Second Lien Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials are hereby directed to accept a photocopy of this Interim Order for filing or recordation for such purpose.  To the extent the Prepetition First Lien Agent or Prepetition Second Lien Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured

- 38 -

party or the loss payee or additional insured, as applicable, under such documents. The Prepetition First Lien Agent and Prepetition Second Lien Agent, as applicable, shall serve as agents for the DIP Agent for purposes of perfecting the DIP Liens on all DIP Collateral that is of a type such that, without giving effect to the Bankruptcy Code and this Interim Order, perfection of a lien thereon may be accomplished only by possession or control by a secured party.

21.    Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties.

(a)    Unless the DIP Agent, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following (unless such order provides for the simultaneous satisfaction of such obligations): (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or the Prepetition Collateral or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, or the 507(b) Claims, except as expressly set forth in this Interim Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the Budget, the DIP Documents, and this Interim Order; or (iii) any modification of any of the DIP Agent's, any DIP Lender's, or any

Prepetition Secured Party's rights under this Interim Order, the DIP Documents, or the Prepetition Documents with respect any DIP Obligations or Prepetition Secured Obligations.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the Prepetition Agents all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent or the Prepetition Agents) to provide under the DIP Documents, the Prepetition Documents, or the provisions of this Interim Order; (iii) authorize their independent certified public accountants, financial advisors, investment bankers and consultants, including Berkeley Research Group LLC and Moelis & Company to cooperate and consult with the DIP Agent (and, so long as an Event of Default has occurred and is continuing, each DIP Lender) and the Prepetition Agents; (iv) upon reasonable advance notice, permit the DIP Agent, the DIP Lenders, and the Prepetition Agents to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (v) permit the DIP Agent and the Prepetition Agents to consult with the Debtors'

- 40 -

management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (vi) upon reasonable advance notice, permit the DIP Agent and the Prepetition Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, and liquidation valuations at reasonable times in respect of any or all of the DIP Collateral or the Prepetition Collateral, in accordance with the DIP Documents and the Prepetition Documents.

22.    Credit Bidding.    In connection with any sale process authorized by the Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, the DIP Agent, DIP Lenders, and Prepetition Secured Parties may credit bid up to the full amount of the outstanding DIP Obligations or the relevant Prepetition Obligations, as applicable, in each case including any accrued and unpaid interest, expenses, fees, and other obligations for their respective priority collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the Intercreditor Agreement; *provided*, that any Credit Bid includes cash consideration sufficient to pay in full any obligations with senior liens on the collateral that is subject to the Credit Bid.

23.    Proceeds of Subsequent Financing.    If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) of the Bankruptcy Code in violation of the DIP Documents or this Interim Order at any time prior to the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors (if applicable), then all the cash

- 41 -

proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.

24.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Prepetition Secured Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable; (b) maintain the cash management system in effect as of the Petition Date, as modified by any order entered by the Court; and (c)(i) maintain accurate records of all transfers (including intercompany transactions) within the cash management system so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date, and (ii) provide reasonable access to such records to the DIP Agent and the legal and financial advisors to the Ad Hoc Committee of Crossholder Lenders.

25.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent and the Prepetition Agents (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Agent, DIP Lenders, or the Prepetition Secured Parties), except as otherwise provided for in the DIP Documents or the Restructuring Support Agreement or as ordered by the Court, and subject in all respects to the Intercreditor Agreement.

26.    <u>DIP Termination Date</u>.  On the DIP Termination Date (as defined below), subject to the Carve-Out (as defined below), (a) all DIP Obligations shall be immediately due and

payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 36 with respect to the Carve-Out (as defined below); (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in accordance with the Budget (subject to the Permitted Variance), and as otherwise agreed by the DIP Agent at the direction of the Required Lenders; and (c) otherwise exercise rights and remedies under the DIP Documents in accordance with this Interim Order. For the purposes of this Interim Order, the "DIP Termination Date" (as defined below) shall mean the "Termination Date" as defined in the DIP Credit Agreement.

27.    Events of Default. The occurrence of any of the following events, unless waived by the Required Lenders in writing and in accordance with the terms of the DIP Credit Agreement, shall constitute an event of default (collectively, the "Events of Default") under this Interim Order: (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order), subject to a three-day cure period (if such failure is capable of being cured); or (b) the occurrence of an "Event of Default" as defined in the DIP Credit Agreement. Upon the indefeasible payment in full in cash of the DIP Obligations (a "DIP Repayment"), the foregoing events of default may be waived by the Prepetition Agents.

28.    Milestones. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the following "Milestones," the failure of the Debtors to comply with any of which shall constitute an Event of Default under each of the DIP Credit Agreement and this Interim Order and, subject to the expiration of the Remedies Notice Period,

result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and permit the DIP Agent, subject to the terms of paragraph 30, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents:

       (a)    As soon as practicable, but in no event later than the date that is forty (40) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order;

       (b)    As soon as practicable, but in no event later than the date that is sixty-five (65) calendar days after the Petition Date, the Bankruptcy Court shall have entered an order approving a disclosure statement for a chapter 11 plan (the "**Disclosure Statement Order**"); and

       (c)    As soon as practicable, but in no event later than the date that is sixty-five (65) calendar days after entry of the Disclosure Statement Order, the Bankruptcy Court shall have entered an order confirming a chapter 11 plan.

29.    [Reserved].

30.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order of the Court, but subject to the terms of this Interim Order, (a) the DIP Agent may declare (i) all outstanding DIP Obligations to be immediately due and payable, (ii) the termination of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve-Out (as defined below) has

- 44 -

occurred through the delivery of the Carve-Out Trigger Notice (as defined below) to the Debtors; and (b) the Prepetition Agents may declare the termination of the Debtors' ability to use Cash Collateral (any such declaration shall be referred to as a "DIP Termination Declaration" and the date on which a Termination Declaration is delivered shall be referred to as the "DIP Termination Date"). A Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), counsel to the DIP Agent (if made by the Prepetition Agents) or counsel to each of the Prepetition Agents (if made by the DIP Agent), and the U.S. Trustee. The automatic stay is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (such five-day period, the "Remedies Notice Period"), the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Interim Order, subject in all respects to the Carve-Out (as defined below). During the Remedies Notice Period, the Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing from the Court, and upon and after delivery of the Termination Notice, the DIP Agent is deemed to have consented to such emergency hearing. The Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code or otherwise, to the extent that such relief would in any way impair or restrict the express rights and remedies granted to the DIP Agent and the DIP Lenders under this paragraph 30. Unless the Court orders otherwise, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order as to the DIP Agent and the DIP Lenders, subject to the Carve-Out (as defined below). Upon the occurrence and during the continuation of an Event of Default, the DIP Agent and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any

- 45 -

trade names, trademarks, copyrights, or other intellectual property of the Debtors to the extent necessary or appropriate in order to sell, lease, or otherwise dispose of any of the DIP Collateral, including pursuant to any Court-approved sale process.

31.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court of competent jurisdiction, the DIP Agent, the DIP Lenders, and Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby, unless such authorization and the incurring of such debt, or the granting of such priority or lien, is stayed pending appeal.

32.    <u>Payment of Fees and Expenses</u>.  The Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, and the transactions contemplated thereby, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Any time that Professionals of the DIP Agent and the DIP Lenders seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall have ten (10) days to raise an objection thereto. If an objection is timely raised, such objection shall be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agent and the DIP Lenders incurred on or prior to such date without the need for any professional engaged by the DIP Agent or the DIP Lenders to first deliver a copy of its invoice as provided for herein. No attorney or advisor to the DIP Agent or the DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) DIP Agent or DIP Lenders in connection with the DIP Facility and (ii) Prepetition Secured Parties in connection with the Chapter 11 Cases, are hereby approved in full.

33.    <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Credit Agreement.

34.    <u>Proofs of Claim</u>. The DIP Agent, the DIP Lenders, and the Prepetition

- 47 -

Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of the Prepetition First Lien Agent and the Prepetition Second Lien Agent is hereby authorized and entitled, in its sole discretion, to file a master proof of claim on behalf of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties, as applicable, in each of the Chapter 11 Cases or Successor Cases.  Any proof of claim filed by the Prepetition First Lien Agent or the Prepetition Second Lien Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties, respectively.   The provisions of this paragraph 34 and each master proof of claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases or to assert that the amount of its claim is different from that set forth on the applicable master proof of claim. The master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Secured Party.

35.    <u>Professional Fees Account</u>.

(a)    Contemporaneously with the initial funding of the DIP Loans, the Debtors shall (i) transfer in an amount equal to the total budgeted weekly fees and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the

- 48 -

Bankruptcy Code (such persons or firms, the "Debtor Professionals") and any persons or firms retained by any Committee (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons" and, such fees and expenses of the Professional Persons, the "Professional Fees") for the first two weekly periods set forth in the Budget and (ii) thereafter, on a weekly basis, transfer cash proceeds from the DIP Facility or cash on hand in an amount equal to the aggregate unpaid amount of Estimated Fees and Expenses (as defined below) included in all Weekly Statements (as defined below) timely received by the Debtors, which shall be reported to the DIP Agent (or, in the event of a DIP Repayment, the Prepetition Agents), or if an estimate is not provided, the total budgeted weekly fees of Professional Persons for the prior week set forth in the Budget, in each case, into a segregated account not subject to the control, liens, security interests, or claims of the DIP Agent, any DIP Lender, or any Prepetition Secured Party (the "Professional Fees Account").

(b)    Starting with the third full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of unpaid fees and expenses incurred during the preceding week by such Professional Person (the "Estimated Fees and Expenses"). No later than one business day after the delivery of a Carve-Out Trigger Notice (as defined below) (the "Carve-Out Statement Date"), each Professional Person shall deliver one additional statement to the Debtors setting forth a good-faith estimate of the amount of Estimated Fees and Expenses incurred on and during the period prior to the Carve-Out Statement Date to the extent not otherwise paid or included in a previous Weekly Statement, and the Debtors shall transfer such amounts to the Professional Fees Account.

- 49 -

(c)     The Debtors shall be authorized to use funds held in the Professional Fees Account to pay Professional Fees as they become allowed and payable pursuant to any interim or final order of the Bankruptcy Court or otherwise; provided, that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court) and the Carve-Out (as defined below) is funded, any funds remaining in the Professional Fees Account shall revert to the DIP Funding Account for use in a manner not inconsistent with this Interim Order; provided, further, that the Debtors' obligations to pay allowed Professional Fees shall in no way be limited or deemed limited to funds held in the Professional Fees Account.

(d)     Notwithstanding anything herein to the contrary, (i) funds transferred to the Professional Fees Account shall be held in trust exclusively for the Professional Persons, including with respect to obligations arising out of the Carve-Out (as defined below) and (ii) funds transferred to the Professional Fees Account shall not be subject to any liens or claims granted to the DIP Lenders herein or any liens or claims granted to the Prepetition Secured Parties as adequate protection, and shall not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral; provided, that the DIP Collateral and the Prepetition Collateral shall include a reversionary interest in funds held in the Professional Fees Account, if any, after all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court) and the Carve-Out (as defined below) is funded.

(e)     Notwithstanding anything herein to the contrary, (i) the Court has jurisdiction over the Professional Fees Account, (ii) all payments from the Professional Fees Account are subject to allowance by the Court, (iii) the beneficiary professionals will indemnify

- 50 -

the estate for any losses to the account, and (iv) the Debtors shall report all disbursements from the account in the monthly operating reports submitted to the Court.

36.    Carve-Out.

(a)    As used in this Interim Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the notice set forth in clause (iv) below); (ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iv) below); (iii) to the extent allowed at any time, whether by interim or final compensation order, all professional fees of Professional Persons (collectively, the "Allowed Professional Fees") incurred at any time before or on the first business day after delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice (as defined below) and without regard to whether such fees and expenses are provided for in the Budget; and (iv) Allowed Professional Fees incurred after the first Business Day following delivery by the DIP Agent of the Carve-Out Trigger Notice (as defined below) (including transaction fees or success fees earned or payable to a Professional Person) in an aggregate amount not to exceed $1,500,000 with respect to Professional Persons (the amount set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").

(b)    For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (or, following a DIP Repayment, the Prepetition Agents) to the Debtors, their lead restructuring counsel (Weil, Gotshal & Manges LLP), the U.S. Trustee, and lead counsel to the Committee (if

- 51 -

any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Facility (or, following a DIP Repayment, any occurrence that  would constitute an Event of Default hereunder) or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)     On the day on which a Carve-Out Trigger Notice is received by the Loan Parties, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand (including cash contained in the DIP Funding Account) to transfer to the Professional Fees Account cash in an amount equal to all obligations benefitting from the Carve-Out; *provided, however*, that all amounts referenced in paragraph 36(a)(i) and (ii) of this Interim Order (or Final Order, as applicable) shall be paid directly to the intended beneficiaries.

(d)     For the avoidance of doubt, to the extent that professional fees and expenses of the Professional Persons have been incurred by the Debtors at any time before or on the first business day after delivery by the DIP Agent (or, following a DIP Repayment, the Prepetition Agents) of a Carve-Out Trigger Notice but have not yet been allowed by the Bankruptcy Court on the date that the DIP Agent (or, following a DIP Repayment, the Prepetition Agents) delivers a Carve-Out Trigger Notice, such professional fees and expenses of the Professional Persons shall constitute Allowed Professional Fees benefiting from the Carve-Out upon their allowance by the Bankruptcy Court, whether by interim or final compensation order and whether before or after delivery of the Carve-Out Trigger Notice, and the Debtors shall fund the Professional Fees Account in the amount of such professional fees and expenses.

(e)     Following delivery of a Carve-Out Trigger Notice, the DIP Agent

- 52 -

shall deposit into the Professional Fees Account any cash swept or foreclosed upon (including cash received as a result of the sale or other disposition of any assets) until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve-Out.  Notwithstanding anything to the contrary herein or in the DIP Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve-Out.  Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Professional Fees Account shall not constitute DIP Loans, (ii) the failure of the Professional Fees Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Carve-Out, Professional Fees Account, a Budget, the Permitted Variance, Weekly Statements, Estimated Fees and Expenses, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order, or otherwise).

(f)      Proceeds from the DIP Facility not to exceed the Investigation Budget Amount may be used on account of professional fees and expenses of Committee Professionals in connection with the Investigation, which obligations will benefit from the Carve-Out in an amount not to exceed the Investigation Budget Amount to the extent unpaid as of the delivery of a Carve-Out Trigger Notice.

(g)      Notwithstanding anything to the contrary contained herein or in the DIP Documents, no Conversion Prepayment (as defined in the DIP Credit Agreement) shall occur

- 53 -

unless and until the Carve-Out is funded.

(h)    For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to all liens securing and all claims on account of the DIP Facility, any adequate protection liens, and superpriority claims (whether granted on account of the DIP Facility, as adequate protection, or otherwise), and any and all other liens and claims.  For the avoidance of doubt, if a DIP Repayment occurs or the DIP Facility is otherwise terminated, the DIP Order shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, the Professional Fees Account, and all related provisions in respect thereof, and the Prepetition Agents shall assume any rights and obligations that the DIP Agent previously had with respect to the Carve-Out and the Professional Fees Account.

37.    <u>No Direct Responsibility for Fees or Disbursements</u>.    Subject to any of the DIP Agent's, DIP Lenders', or Prepetition Secured Parties' obligations with respect to the Carve-Out and the Professional Fees Account, none of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties shall be (i) responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases, or (ii) obligated in any way to compensate, or to reimburse expenses of, any Professional Persons or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

38.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out</u>.  No proceeds of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, in each case, including Cash Collateral, and no portion of the Carve-Out or Professional Fees Account may be

- 54 -

used in connection with (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the DIP Agent's or the DIP Lenders' realization upon any of the DIP Collateral or enforcement of any of their respective rights thereto in accordance with paragraph 30; (b) for any purpose that is prohibited under this Interim Order, the Final Order (when entered), the DIP Documents, or the Bankruptcy Code; (c) to finance in any way: (i) any adversary action, suit, arbitration, proceeding, application, motion, or other litigation of any type adverse to the interests of any or all of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or their respective rights and remedies under DIP Loan Documents, the Interim Order, the Final Order (when entered), or the Prepetition Documents, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents, or (ii) any other action, which with the giving of notice or passing of time, would result in an Event of Default under the DIP Loan Documents; (d) for the payment of fees, expenses, interest, or principal under the Prepetition Documents (in each case, other than payments on account of the Adequate Protection Obligations); (e) unless the Exit Conversion occurs, to make any distribution under a plan of reorganization in the Chapter 11 Cases that does not provide for the indefeasible payment of the DIP Loans in full and in cash (including, subject to entry of the Final Order, the Redemption Premium); (f) except as permitted by the Budget (including Permitted Variances) to make any payment in settlement of any claim, action, or proceeding in excess of $500,000 in the aggregate without the prior written consent of the DIP Agent, acting at the direction of the Required Lenders; (g) selling or otherwise disposing of the DIP Collateral without the consent of the DIP Agent; (h)

- 55 -

incurring Indebtedness (as defined in the DIP Credit Agreement), except to the extent permitted under the DIP Credit Agreement; (i) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Documents; or (j) seeking to subordinate, recharacterize, disallow, or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Cash Collateral and/or proceeds of the DIP Facility may be used, subject to entry of the Final Order, for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority, or extent of the Prepetition Liens (the "Investigation") before the Challenge Deadline (as defined below).

39.    Payment of Compensation.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, in accordance with the DIP Documents.

40.    Effect of Stipulations on Third Parties.

(a)    *Generally.*  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "Stipulations") shall be binding on the Debtors, any trustee, or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases. The Stipulations shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, a Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite

- 56 -

authority (i) has timely commenced an appropriate proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 40) challenging any of the Stipulations (each such proceeding or contested matter, a "Challenge") by no later than (a) for a Committee (if appointed), 60 days from its formation or (b) for all other parties in interest (excluding the Debtors), 75 days following the entry of the Interim Order (the "Challenge Deadline"), as such deadline may be extended in writing from time to time in the sole discretion of the Prepetition First Lien Agent (with respect to the Prepetition First Liens and Obligations or the adequate protection afforded to the Prepetition First Lien Secured Parties) and the Prepetition Second Lien Agent (with respect to the Prepetition Second Lien Liens and Obligations or the adequate protection afforded to the Prepetition Second Lien Secured Parties) or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge and any such judgment has become a final judgment that is not subject to any further review or appeal, and then only to the extent of any such final judgment.

(b)     *Binding Effect*.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such Challenge does not result in a final and non-appealable judgment or order that is inconsistent with any of the Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Stipulations shall, pursuant to this Interim Order, become irrevocably binding on any person, entity, or party in interest in the Chapter 11

- 57 -

Cases, as well as their successors and assigns, and in any Successor Case for all purposes and shall

not be subject to further challenge or objection.  Notwithstanding anything to the contrary herein,

if any Challenge is properly and timely commenced by a party in interest, the Stipulations shall

nonetheless remain binding on all other parties in interest.  To the extent any Challenge is timely

and properly commenced and is unsuccessful, the Prepetition Secured Parties shall be entitled to,

as adequate protection, payment of the related costs and expenses, including, but not limited to,

reasonable and documented attorneys' fees, incurred in defending themselves against any

unsuccessful Challenge.

41.    No Third-Party Rights.    Except as explicitly provided for herein, this

Interim Order does not create any rights for the benefit of any third party, creditor, equity holder,

or any direct, indirect, or incidental beneficiary.

42.    Section 506(c) Claims.  Subject to entry of the Final Order, except to the

extent of the Carve-Out, no costs or expenses of administration that have been or may be incurred

in the Chapter 11 Cases at any time shall be charged against the DIP Agent, the DIP Lenders, the

Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien

Agent, or the Prepetition Second Lien Lenders, the DIP Collateral, or the Prepetition Collateral

pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written

consent of the DIP Agent, the Prepetition First Lien Agent, or the Prepetition Second Lien Agent,

as applicable, and no such consent shall be implied from any action, inaction, or acquiescence by

any party.

43.    No Marshaling/Applications of Proceeds.  Subject to entry of the Final

Order, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien

- 58 -

Lenders, the Prepetition Second Lien Agent, and the Prepetition Second Lien Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

44.    Section 552(b).  Subject to entry of the Final Order, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Agent, and the Prepetition Second Lien Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to any of them.

45.    Limits on Lender Liability.  Subject to entry of the Final Order, nothing in this Interim Order, any of the DIP Documents, the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition

- 59 -

upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

46.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders), the Prepetition First Lien Agent (on behalf of the Prepetition First Lien Lenders), and the Prepetition Second Lien Agent (on behalf of the Prepetition Second Lien Lenders), shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

47.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Documents.

48.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents and the Intercreditor Agreement: (a) the DIP Agent's, DIP Lenders', and Prepetition Secured Parties' rights to seek any other or supplemental relief; (b) any of the rights of any of the DIP Agent, DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay imposed by section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section

- 60 -

1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in these Chapter 11 Cases or any Successor Cases.

     49.    <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

     50.    <u>Binding Effect of Interim Order</u>. Immediately upon entry on the docket of this Court, the terms and provisions of this Interim Order shall become binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

     51.    <u>No Modification of Interim Order</u>. Until and unless the DIP Obligations

- 61 -

and the Prepetition Secured Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly, any modification, stay, vacatur, or amendment to this Interim Order without the prior written consent of the DIP Agent, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent, and no such consent shall be implied by any action or inaction of the DIP Agent or the Prepetition Agents.

52.    <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties each shall be bound by, and in all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions, and restrictions of the Intercreditor Agreement.

53.    <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall control.

54.    <u>Discharge</u>.  The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization, or each of

- 62 -

the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent, as applicable, has otherwise agreed in writing; *provided*, that the DIP Loans shall automatically and mandatorily convert into the Exit Term Loan A (including the Redemption Premium, as defined in the DIP Credit Agreement) upon the occurrence of the Exit Conversion (as defined in the DIP Credit Agreement, the "Exit Conversion") in accordance with the DIP Credit Agreement.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment in full in cash of the DIP Obligations (other than contingent indemnification obligations for which no claim has been asserted), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) or on such other terms as are set forth in the Restructuring Support Agreement (a "Prohibited Plan or Sale"), without the written consent of each of the DIP Agent, DIP Lenders, the Prepetition First Lien Agent, and Prepetition Second Lien Agent, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

55.    Survival.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11

- 63 -

Cases or any Successor Cases. The terms and provisions of this Interim Order shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases notwithstanding the entry of any orders described in clauses (a)-(d) above, and all claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties pursuant to this Interim Order and/or the DIP Documents shall maintain their validity and priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (ii) in respect of the Prepetition First Lien Facility, all of the Prepetition First Lien Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (iii) in respect of the Prepetition Second Lien Facility, all of the Prepetition Second Lien Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted). The terms and provisions concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents, and/or the indefeasible repayment of the DIP Obligations.

56.    <u>Payments Held in Trust</u>. Except as expressly permitted in this Interim Order or the DIP Credit Agreement, and subject to the Carve-Out, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto from any other source prior to all DIP Obligations in accordance with the DIP Credit Agreement,

- 64 -

such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Credit Agreement and this Interim Order.

57.    Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

58.    Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **March 12, 2020 at 10:00 a.m. (ET)** before the Honorable Brendan L. Shannon, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware.  On or before February 17, 2020, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **March 5, 2020 at 4:00 p.m. (ET)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (attn: Ray C. Schrock, P.C. (ray.schrock@weil.com), David Griffiths (david.griffiths@weil.com), and Andriana Georgallas (andriana.georgallas@weil.com); (ii) counsel to the Ad Hoc Committee of Crossholder Lenders, Milbank LLP, 55 Hudson Yards, New

- 65 -

York, NY 10001 (attn: Evan R. Fleck (efleck@milbank.com) and Nelly Almeida (naleida@milbank.com)), and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (attn: Robert J. Dehney (rdehney@mnat.com) and Joseph C. Barsalona II (jbarsalona@mnat.com)); (iii) counsel to the DIP Agent and the Prepetition First Lien Agent, Paul Hastings LLP, 200 Park Avenue, New York, New York 10166 (Attn: Michael Baker, Esq. (michaelbaker@paulhastings.com) and Shekhar Kumar, Esq. (shekharkumar@paulhastings.com)); (v) counsel to the Prepetition Second Lien Agent, Pryor Cashman LLP, 7 Times Square, New York, New York 10036 (Attn: Seth Lieberman, Esq. (slieberman@pryorcashman.com)), as counsel to the successor Second Lien Agent; (vi) counsel to the Ad Hoc Second Lien Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Philip Dublin, Esq. (pdublin@akingump.com)); and (vii) counsel to the Committee (if appointed).

59.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

60.    DIP Election Procedures.  The DIP Election Procedures are hereby approved.  The DIP Agent may, in connection with allocations of the commitments under the DIP Facility or any other allocations contemplated to be made pursuant to the DIP Credit Agreement, conclusively rely on, and shall have no liability whatsoever with respect to, ownership information with respect to the Prepetition Secured Obligations as set forth on the Register (as defined in the First Lien Credit Agreement or Second Lien Credit Agreement, as applicable) as of the Election Deadline (as defined in the DIP Credit Agreement).

- 66 -

SO ORDERED by the Court this 13th day of February, 2020.

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

- 67 -